UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| KYLE REDINGER, ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| v. ) | |
| ) | |
| BNSF RAILWAY COMPANY and ) | Case No.  4:3-cv-100 |
| NATIONAL RAILROAD PASSENGER ) | |
| CORPORATION D/B/A AMTRAK, ) | |
| ) | |
| Defendants. ) | |
| ) | |

# COMPLAINT

COME NOW Plaintiff, through his attorneys, and for his Complaint in this matter state the following:

## I. PARTIES

**PLAINTIFFS**

1. Kyle Redinger is an individual and citizen of Monroe County, Iowa.

**DEFENDANTS**

2. BNSF Railway Company (hereinafter "BNSF") is a for-profit publicly-traded and owned foreign corporation based out of Fort Worth, Texas.  It is primarily a railroad company, operating thousands of miles of track across the United States.  BNSF engages in the business of railroad operations in the State of Iowa, owns rail lines in Iowa, and is the owner of the railroad track over which this Collision occurred.  BNSF may be served with legal service of process through its registered agent: C T Corporation System, 400 E Court Ave, Des Moines, Iowa 50309.

3. At all times pertinent hereto, all employees of the BNSF were acting in their

1

individual capacity and also as agents of BNSF, within the scope of their employment and authority, and in the furtherance of the business of BNSF. All the acts and omissions of the employees of the BNSF are imputed to their employer, who is liable for such acts and omissions, as well as rendering the individual Defendants liable in their individual capacities.

4. Defendant National Railroad Passenger Corporation d/b/a Amtrak (hereinafter "Amtrak") is a foreign corporation duly organized and existing under the laws of the District of Columbia, with its principal place of business in the District of Columbia and doing substantial business in the State of Iowa. Pursuant to federal law, Amtrak may be served by certified mail addressed to the Secretary of Amtrak, 60 Massachusetts Ave. Northeast, Washington, D.C. 20002.

5. At all times pertinent hereto, all employees of Amtrak were acting in their individual capacity and also as agents of Amtrak, within the scope of their employment and authority, and in the furtherance of the business of Amtrak. All the acts and omissions of the employees of Amtrak are imputed to their employer, who is liable for such acts and omissions, as well as rendering the individual Defendant liable in their individual capacities.

## II. JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 USC § 1349 as the United States is the owner of more than one-half of Amtrak's capital stock.

7. Venue is proper in this Court as the incident giving rise to this litigation occurred in the State of Iowa.

8. All allegations set forth in this Complaint are based upon information and belief.

9. All allegations set forth in each of the paragraphs in this Complaint are incorporated by reference into each of the other sections and paragraphs contained in this Complaint, as if fully

set forth therein.

### III. FACTS AND ALLEGATIONS

10. On October 27, 2021 at approximately 1:53 pm, Kyle Redinger was driving an International Garbage Truck eastbound on 160th Street in Marion, Monroe County, Iowa.

11. As the garbage truck was approaching traveling eastbound on 160th Street, he encountered a railroad-highway grade crossing, which is identified as United States DOT Grade Crossing No. 079143U (hereinafter the "160th Street Crossing" or "the crossing").

12. The 160th Street Crossing is a dangerous, complex, and unguarded crossing. The crossing is public with one mainline railroad track running in a generally north-south direction through 160th Street. 160th Street is a two-lane gravel road. The railroad track is owned, operated, and maintained by BNSF.

13. The crossing is completely unprotected by any active warning devices, such as lights and gates. The unprotected 160th Street Crossing is only marked with crossbuck and yield signs.

14. As a motorist approaches the 160th Street Crossing from the west, their view in the northeast and southeast quadrants of the crossing are blocked by heavy vegetation.

15. There has been at least one collision at the 160th Street Crossing. The prior collision has resulted one individual also being seriously injured. BNSF has known or has reason to know about this prior collision and the unreasonably dangerous characteristics present of the 160th Street Crossing.

16. At about the same as Kyle's truck was approaching the 160th Street Crossing, an Amtrak passenger train being operated by an employee of Amtrak within the course and scope of

their employment was traveling in a northbound direction at a high rate of speed, over 60 mph.

17. As the train was approaching 160th Street Crossing, the Amtrak locomotive engineer observed the truck make an unwavering approach to the crossing, but failed to properly sound the horn and timely slow or stop the train by applying emergency braking.

18. The Amtrak train struck the passenger rear side of Kyle's garbage truck, spun it into the northeast ditch facing west/southwest (hereinafter the "Collision").

19. Kyle was life-flighted to a local hospital and sustained serious injuries as a result of this Collision.

## IV. CAUSES OF ACTION

### COUNT 1 — Negligence and Fault of All Defendants

20. Defendants have a duty to exercise reasonable care to avoid injuring or killing members of the public. In this case Defendants breached their duty by failing to exercise reasonable care. The public has come to rely upon the following three basic components as essential to railroad crossing safety: a) reasonable and timely audible warning of an approaching train, b) reasonable and timely visual warning of an approaching train, and c) a safe place to cross the tracks. Defendants have actively worked to instill these fundamental beliefs into the motoring public. In this case none of these three basic components were provided to the driver prior to the accident.

21. Defendants have a duty to exercise reasonable care to avoid injuring or killing members of the public. In this case, Defendants breached its duty by failing to exercise reasonable care. As a direct proximate result of Defendants' breach of this duty, Plaintiff suffered damages, as hereafter alleged. All acts or omissions of Defendants constitute negligence, gross negligence,

willful and wanton conduct, recklessness, intentional conduct, and demonstrate a reckless and intentional disregard for the safety of the motoring public.

22. BNSF and Amtrak have a duty to exercise reasonable care in the operation of its trains so as to avoid injuring or killing members of the public. In this case, BNSF and Amtrak breached its duty by the failure to exercise reasonable care in the operation of trains over this crossing, failure to properly maintain the crossing environment and failure to provide adequate warning of the approaching train.

WHEREFORE, Plaintiff prays for judgment on Count 1, and each and every other Count of this Complaint, in their favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of the jurisdictional threshold amount required for this court, that Plaintiff further be awarded reasonable interest, costs and all other relief which the Court deems just and proper.

### COUNT 2 — INADEQUATE AUDIBLE WARNING
### (Amtrak)

23. The locomotive engineer operating the train involved in this collision was an employee of Amtrak. At the time of this collision, that locomotive engineer was working within the course and scope of her employment. Any negligence of the locomotive engineer or any other Amtrak employee in the lead locomotive is attributable to Amtrak through the doctrine of respondeat superior.

24. The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct of the Amtrak:

    a. In failing to give a reasonable and timely audible warning of the train's approach;

    b. In failing to ensure the horn on the locomotive involved in the Collision comply with

      the audibility requirements of 49 C.F.R. § 229.129;

c. In failing to give a reasonable and timely warning of the train's approach by failing to give a proper audible warning;

d. In failing to provide the driver sufficient audible warning of the train's approach prior to this Collision;

e. In failing to ensure that the train horn was properly sounded to warn of the train's approach to the 160th Street Crossing, to be "properly sounded" the horn must not only be loud enough, it must be blown in the correct sequence and for a sufficient duration;

f. In failing to use an emergency horn sequence.

25. Amtrak has knowledge that its crews do not properly sound the horn consistently, but has chosen not to investigate or punish horn violations, monitor for insufficient horn activation or otherwise attempt to accurately document these violations. Instead, Amtrak has intentionally misrepresented the extent of the problem by publishing false and misleading information concerning the nature and extent of the problem. As a result, its train crews are aware that the railroad condones horn violations. It is the routine practice of Amtrak to ignore violations of horn rules at grade crossings. Accordingly, Amtrak breached its duties.

26. The investigation of this collision has revealed no evidence that the driver of the motor vehicle was provided an adequate audible warning from the train prior to the accident. The driver was physically unable to hear the train horn in sufficient time to react and avoid the accident, and no fault should be assessed to the driver for not hearing and responding to such an inaudible warning.

WHEREFORE, Plaintiff prays for judgment on Count 2, and each and every other Count of this Complaint, in their favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of the jurisdictional threshold amount required for this court, that Plaintiff further be awarded reasonable interest, costs and all other relief which the

Court deems just and proper.

## COUNT 3 — INADEQUATE VISUAL WARNING
### (BNSF and Amtrak)

27. BNSF has a statutory duty under Iowa law, Iowa Code § 327F.27 to maintain its right-of-way to keep it free from obstruction to the view of the motoring public.

28. BNSF has the common law duty to use ordinary care to maintain crossings over all public highways in such a manner that it shall be safe for travelers. This common law duty requires BNSF to clear visibility obstructions to provide motorists with an adequate view down the track in both directions, and it extends beyond the distances established by statute.

29. BNSF's own standards and the railroad industry standards create a common law duty for the BNSF to clear visibility obstructions to provide motorists with an adequate view down the track in both directions, and such duty extends beyond the distances established by statute. This includes clearing all vegetation from fence lines and all trees overhanging the right of way.

30. Iowa statutory law does not preempt the BNSF's common law duties to clear visibility obstructions beyond the distances established by statute.

31. The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of the BNSF and Amtrak:

   a. In failing to give reasonable and timely visual warning of the train's approach;

   b. In failing to provide the illumination of headlights and auxiliary lights in compliance with 49 C.F.R. § 229.125 and failing to provide unimpaired sight distances for motorists to see those headlights and auxiliary lights;

   c. In failing to clear visibility obstructions from BNSF's right-of-way;

   d. In failing to clear vegetation pursuant to BNSF and indsutry standards;

   e. In failing take reasonable steps to provide motorists with adequate sight triangles or to

    warn of their inadequacy, including but not limited to failing to report the inadequate sight triangles and/or failing to work with local road authorities to address this condition;

f. In failing to properly train its employees to recognize safety hazards caused by visibility obstructions and in condoning its employees' failures to report such hazards;

g. In failing to report the obvious safety hazards at this Crossing; and

h. In failing to correct the safety hazards, denying the extent of the problem, and refusing to acknowledge its responsibilities for maintaining unimpaired sight distances.

WHEREFORE, Plaintiff prays for judgment on Count 3, and each and every other Count of this Complaint, in their favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of the jurisdictional threshold amount required for this court, that Plaintiff further be awarded reasonable interest, costs and all other relief which the Court deems just and proper.

### COUNT 4 — TRAIN OPERATIONS
### (Amtrak)

32. The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of the Amtrak:

a. In failing to keep a proper lookout prior to the Collision;

b. In failing to take reasonable precautions to protect the 160th Street Crossing before the train fully occupied the crossing;

c. In failing to travel at a speed that allowed the train to stop in time to avoid the Collision;

d. In failing to slow or stop the train to avoid "a specific, individual hazard" at the 160th Street Crossing prior to the Collision and/or failing to approach the 160th Street Crossing prepared to stop due to "an essentially local safety hazard;"

e. In failing to instruct its train crews on the appropriate circumstances under which they should be prepared to brake, slow, or stop the train for safety hazards at railroad crossings; and

    f. In failing to be prepared to brake, slow, or stop for motorists at the 160th Street Crossing.

33. Plaintiff is not making any claim for excessive speed based on "a specific individual hazard" or "an essentially local safety hazard." The claims based on "a specific individual hazard" and "an essentially local safety hazard" should not be interpreted as anything but the failure to, or the failure to be prepared to, slow the train, apply the brakes, or stop the train.

34. Amtrak has also condoned its employees' failure to modify train operations to account for hazards at railroad crossings and has adopted a routine practice of ignoring hazards to the motoring public. This intentional indifference to the safety of Plaintiff and the motoring public was one of the contributing factors that caused this Collision.

WHEREFORE, Plaintiff prays for judgment on Count 4, and each and every other Count of this Complaint, in their favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of the jurisdictional threshold amount required for this court, that Plaintiff further be awarded reasonable interest, costs and all other relief which the Court deems just and proper.

### COUNT 5 — FAILURE TO INSPECT AND REPAIR UNSAFE CROSSING
### (BNSF)

35. Regulations specify many duties BNSF has in connection with the crossing, track and surrounding appurtenances. Those duties include, but are not limited to, the following:

    a. The duty to inspect the crossing, track and surrounding appurtenances pursuant to 49 C.F.R. §§ 213.233, 213.237, 213.233 and associated sections;

    b. The duty to designate qualified persons to inspect track for defects pursuant to 49 C.F.R. § 213.7(b);

    c. The duty to immediately prepare and maintain a record of each inspection of its track to specify the track inspected, date of inspection, location and nature of any defects and

      identifying the appropriate remedial for such defects all pursuant to 49 C.F.R. § 213.241 and its own rules; and

   d. The duty to immediately bring its track into compliance with track safety standards or halt operations over that track pursuant to 49 C.F.R. § 213.5.

36. The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of BNSF:

   a. In failing to properly inspect and maintain the 160th Street Crossing;

   b. In failing to properly identify, document, report, or repair the hazardous track and crossing conditions described herein;

   c. In routinely ignoring the hazardous conditions posed by the 160th Street Crossing;

   d. In allowing these hazardous conditions to exist in direct violation of the Code of Federal Regulations and BNSF's rules created pursuant to such regulations.

37. The hazardous track and crossing conditions described herein were not properly identified, documented, reported or repaired by BNSF and its employees. Instead these hazardous conditions were allowed to exist as a direct violation of the code of Federal Regulations and the BNSF's own rules created pursuant to such regulations. BNSF knew or should have known that the existence of these hazardous conditions created an unsafe crossing in violation of these rules and regulations.

38. Many factors have combined to render this crossing unsafe for motorists. This combination of track conditions required remedial action to allow for safe operations over this crossing by motorists and railroad traffic. If BNSF would have properly conducted track inspections at this crossing, the hazardous conditions at this crossing would have been identified and remedial action taken long before this accident, thereby preventing this collision.

      WHEREFORE, Plaintiff prays for judgment on Count 5, and each and every other Count

of this Complaint, in their favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of $75,000.00, costs incurred and expended herein, and attorneys' fees, together with prejudgment and post-judgment interest, and other relief as the Court deems just and proper.

### COUNT 6 — SPECIFIC UNSAFE CROSSING CONDITIONS
### (BNSF)

39. The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of the BNSF, which allowed many factors, including the following, to exist and combine to render this Crossing unsafe for motorists:

   a. Vegetation in the northeast and southeast quadrant of the crossing contributed to the overall complexity of this crossing.

   b. The horizontal alignment of the track and roadway at this Crossing is one of the characteristics of the crossing contributing to the overall complexity of the crossing. The track and the road should intersect at or near 90 degrees and crossing located on either roadway or railroad curves will require special consideration. The road and tracks at this crossing intersect at a skewed angle in a curve which was one of the characteristics of the crossing contributing to the complexity of the driving task.

40. Although there are many problems that are caused by the complex crossing characteristics of this crossing, Plaintiff is not making any claim based upon anything inappropriate concerning the design or construction of the railroad track. These allegations assert that this crossing was not properly maintained and should not be interpreted as anything but improper maintenance issues.

WHEREFORE, Plaintiff prays for judgment on Count 6, and each and every other Count of this Complaint, in their favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of the jurisdictional threshold amount required for this court, that Plaintiff further be awarded reasonable interest, costs and all other relief which the

Court deems just and proper.

### COUNT 7 — FAILURE TO REPORT UNSAFE CONDITIONS
### (BNSF and Amtrak)

41. The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of the BNSF and Amtrak:

   a. In failing to correct or accommodate for the hazardous characteristics and conditions at the 160th Street Crossing;

   b. In condoning its employee's failure to report these unsafe crossing conditions and characteristics;

   c. In failing to require its employees to report unsafe conditions at the 160th Street Crossing, in violation of BNSF and Amtrak's Operating Rules and federal regulations which require BNSF and Amtrak to instruct its employees to comply with its operating rules.

42. BNSF and Amtrak have actual or constructive knowledge that all of the above mentioned characteristics and conditions make crossings more complex and more hazardous for motorists. Instead of correcting or accommodating for these hazardous characteristics and conditions, BNSF and Amtrak have elected to ignore their existence. As a result, its employees are aware that the railroad does not want them to report hazardous conditions that are known to make crossings like this unsafe. It is the routine practice of BNSF and Amtrak to condone its employee's failure to report these unsafe crossing characteristics and conditions. BNSF and Amtrak knew, or should have known, that this failure to report and address unsafe crossing characteristics and conditions, would result in unnecessary loss of life and injuries.

WHEREFORE, Plaintiff prays for judgment on Count 7, and each and every other Count of this Complaint, in their favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of the jurisdictional threshold amount required for

this court, that Plaintiff further be awarded reasonable interest, costs and all other relief which the Court deems just and proper.

### COUNT 8 — SIGNS, SIGNALS AND MARKINGS
### (BNSF)

43. The conditions and characteristics at this Crossing were such that they rendered this crossing "extra-hazardous," "ultra-hazardous," and "unusually dangerous."

44. The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of the BNSF:

   a. In failing to share necessary information, failing to establish an open line of communication, and failing to engage in any effort to evaluate crossing conditions and characteristics at this Crossing with state and local road authorities;

   b. In failing to comply with MUTCD standards;

   c. In failing to install and/or maintain adequate warning devices at this crossing, including automatic gates with flashing light signals;

   d. In failing to take additional measures to protect those using the crossing, including but not limited to installing automatic gates with flashing light signals;

   e. In failing to provide warning devices required pursuant to 23 C.F.R. § 646.2l4(b)(3)(i), including "automatic gates with flashing light signals."

   f. In failing to promote the usage of lights and gates or other cost-effective active warning devices and in engaging in conduct that has resulted in fewer installations of lights and gates. Even though BNSF knows that lights and gates are affordable, cost-effective guarding devices that have proven to be at least 90% effective;

   g. By refusing to supplement the federal funding of active warning devices with any meaningful safety program;

   h. By refusing to install active warning devices paid for with federal funding unless that State of Iowa or its citizens pay for the maintenance of those active warning devices;

   i. By delaying the installation of lights and gates, engaging in conduct that unnecessarily increases the costs of these proven safety devices, and diverting funds that should have been used to install these devices;

j.  By refusing to promote the usage of other low cost active warning devices for crossings, such as the 160th Street Crossing.

WHEREFORE, Plaintiff prays for judgment on Count 8, and each and every other Count of this Complaint, in their favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of the jurisdictional threshold amount required for this court, that Plaintiff further be awarded reasonable interest, costs and all other relief which the Court deems just and proper.

### COUNT 9 — INTENTIONAL DISREGARD FOR PUBLIC SAFETY
### (BNSF)

45. BNSF's customs, policies, and conduct in all of the aforementioned allegations were willful and wanton, and demonstrated an intentional and deliberate disregard for the safety of Plaintiff and the motoring public. BNSF has intentionally elected to disregard legal duties owed to the motoring public.

46. BNSF knew and or had information from which it should have known that each separate aspect of its conduct, as described herein, created an unreasonable risk of substantial and intolerable injury to the motoring public, involved a high probability that harm would result, and resulted in substantial certainty that severe injury would occur; such conduct, in light of this knowledge, shows complete indifference to the safety of Plaintiff and the motoring public.

47. BNSF's customs, policies, and conduct in all of the aforementioned allegations establish that BNSF deliberately proceeded to act in conscious or reckless disregard of the safety of the motoring public or acted with indifference to the safety of the motoring public, and such conduct shows conscious disregard for the safety of Plaintiff and the motoring public.

48. BNSF has demonstrated a pattern of willful and wanton conduct by intentionally

failing to enforce its own policies and procedures as well as federal and state laws providing for the safe operation of trains. This pattern of conduct has condoned and ratified the conduct of its employees and agents to disregard duties owed to the motoring public.

49. BNSF has made a deliberate decision that it will be cheaper to pay compensatory damages for claims resulting from car-train collisions than to properly maintain its crossing, upgrade its crossings, and properly train its employees on issues involving crossing safety. BNSF's conduct as set forth herein constitutes a deliberate disregard for the rights and safety of Plaintiffs, and the motoring public.

WHEREFORE, Plaintiff prays for judgment on Count 9, and each and every other Count of this Complaint, in their favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of the jurisdictional threshold amount required for this court, that Plaintiff further be awarded reasonable interest, costs and all other relief which the Court deems just and proper.

## V. DEMAND FOR JURY TRIAL

50. Plaintiffs demand a jury trial on all issues raised herein.

## VI. DAMAGES AND PRAYER FOR RELIEF

51. Plaintiff reserves the right to amend their Complaint in this matter, as permitted by applicable Iowa law.

52. Kyle Redinger is entitled to recover damages exceeding the jurisdictional threshold of this court including but not limited to the following categories:

53. Kyle Redinger is entitled to recover damages exceeding the jurisdictional threshold of this court including but not limited to the following categories:

a. Past Medical Expenses

b. Future Medical Expenses

c. Loss Of Time – Past Earnings

d. Loss Of Future Earning Capacity

e. Loss Of Full Mind And Body - Past

f. Loss Of Full Mind And Body -

g. Physical And Mental Pain And Suffering - Past

h. Physical And Mental Pain And Suffering - Future

WHEREFORE, Plaintiff prays that they each be awarded judgment, jointly and severally against Defendants for compensatory damages for the injuries and damages described above in an amount to be determined by the jury which, in any event, shall be and is in excess of the jurisdictional threshold amount required for this court, that Plaintiff further be awarded reasonable interest, costs and all other relief which the Court deems just and proper.

Respectfully submitted:

/s/Danny L. Cornell
Danny L. Cornell     #AT0001765
CORNELL LAW
111 East Washington Street
P.O. Box 27
Mt. Pleasant, IA 52641
(319) 219-2800 – Telephone
(319) 385-2148 – Facsimile
danny@cornellinjurylaw.com

And

Nathan L. Karlin, KS #26392
*(pro hac vice pending)*
POTTROFF & KARLIN, L.L.C.
320 Sunset Avenue
Manhattan, Kansas 66502
Phone: 785-539-5656
Fax:     785-539-1750
Email: nathan@pottroff.com

**ATTORNEYS FOR PLAINTIFFS**